_____FILED _____ENTERED
_____ _____ _____RECEIVED

IN THE UNITED STATES DISTRICT COURT          FEB 11 2000
FOR THE DISTRICT OF MARYLAND

AT _____
CLERK U.S. _____ COURT
DISTRICT OF MARYLAND
BY                                    DEPUTY

LOUIS V. GABALDONI, M.D.          :

    v.                              : CIVIL NO. L-98-1094

                         :

THE WASHINGTON COUNTY             :
   HOSPITAL ASSOCIATION, et al.   :


## MEMORANDUM

In accordance with this Court's December 14, 1999 Order,
Defendants have submitted for in camera review a series of
correspondence that they claim is protected by attorney-client
privilege and/or work-product doctrine.[1]

As a preliminary matter, the Court notes that the attorney-
client privilege is to be construed narrowly. See E.I. du Pont
de Nemours & Co. v. Forma-Pack, Inc, 351 Md. 396, 406 (1998).
The privilege applies only to those "communications pertaining to
legal assistance made with the intention of confidentiality."
Id. at 415-16 (citing Burlington Indus. v. Exxon Corp., 65 F.R.D.
26, 37 (D. Md. 1974)).

### A.    The Schaefer correspondence

Defendants have submitted for review a series of
correspondence to and from Mr. Michael Schaefer, general counsel
for the defendants (Exhibit B in their December 28, 1999

---

[1]The Court thanks the defendants for their well-organized
submission.



submission). The Court finds as follows as to each of the documents reviewed:

B1: Privileged.  This memorandum from hospital official Tillou to Mr. Schaeffer is a request for legal advice and a discussion of responses to the state Board of Physician Quality Assurance (BPQA) subpoenas.  It is protected by attorney-client privilege.

B2: Privileged.  This letter from Mr. Schaefer to Dr. Plavcan, the Hospital's Vice President for Medical Affairs, contains legal advice, and is protected by attorney-client privilege.  The enclosure to the letter (a second letter from Dr. Weiner of the BPQA to Pat Brown) is not privileged, however, and should be produced.  According to the defendants, it has already been produced.

B3: Not privileged.  Although written by Attorney Schaefer, this letter to Hospital Chief of Staff Dr. Brooks contains no legal advice.  Rather, it informs Dr. Brooks of the status of the review of Dr. Gabaldoni's application.  It is to be produced to the plaintiff.

B4: Not privileged.  This draft of a letter to Mr. Schaefer from Dr. Brooks does not pertain to legal advice, but rather to the status of the internal investigation of Dr. Gabaldoni.  It is to be produced to the plaintiff.

B5: Not privileged.  This is the final version of the draft letter in exhibit B4.  It is to be produced to the plaintiff.

B6: These notes of a conversation were taken by Mr. Schaefer and are protected by the work-product doctrine.  The conversation between the Mr. Schaefer and Kathy Scott pertained to proceedings of the state BPQA.  The Court is satisfied that the prospect of an adversarial proceeding was sufficiently significant to qualify the document for work-product protection.

B7: Privileged.  This memorandum memorializes a conversation pertaining to legal advice between Ms. Ellis, Medical Staff Coordinator, and Mr. Schaefer.

B8: Privileged.  This memorandum from Mr. Tillou to Mr. Schaefer seeks legal advice concerning the BPQA proceedings, and is protected by attorney-client privilege.

B9: Privileged.  These handwritten notes by Mr. Schaefer are protected by attorney-client privilege.  They also pertain to advice for the BPQA hearing, and are protected by the work-product doctrine as well.

B10: Not Privileged.  This letter was drafted by Mr. Schaefer for Dr. Plavcan.  Dr. Plavcan was to send the letter to Jim Ralls at the Office of Licensing and Certification Programs.  There was thus no intention of confidentiality attached to this letter, and the attorney-client privilege does not apply.  See E.I. du Pont, 351 Md. at 416 (citing United States v. (Under

Seal), 748 F.2d 871, 874 (4th Cir. 1984)). Defendants are to produce this document to the plaintiff.

B11: Privileged. These handwritten notes by Mr. Schaefer reflect a conversation with Ms. Scott of the BPQA. The prospect of litigation in this situation renders the notes protected by the work-product doctrine.

B12: Privileged in part. This is a handwritten draft of the Board Resolution prepared by Mr. Schaefer. Defendants claim this document is protected by attorney-client privilege. The Court finds, however, that only the final paragraph on the first page and the first paragraph on the second page can be construed as legal advice. The text of the Board Resolution is identical to the text released in the minutes of the April 25, 1996 Board meeting. No confidentiality thus attaches to it. The remaining text, both at the top of the first page and the second paragraph on the second page also is neither confidential nor legal advice. Rather, it records the steps to be taken concerning Dr. Gabaldoni's privileges. These steps were conveyed to Dr. Gabaldoni and the public soon after this document was created. Defendants are to redact the final paragraph on page one and the first paragraph on page two. They are to produce the balance of the document.

B13: Privileged.  This letter from Mr. Schaefer to Mr. Murphy contains legal advice and is protected by attorney-client privilege.

B14: Privileged.  This letter from Mr. Schaefer to Mr. Murphy contains legal advice and is protected by attorney-client privilege.

B15: Privileged.  This fax cover sheet from Dr. Plavcan's assistant to Mr. Schaefer is a request for legal advice and is protected by attorney-client privilege.

B16: Privileged.  This memorandum from Mr. Schaefer to several WCHA and AHS officials contains legal advice and is protected by attorney-client privilege.

## B.  Correspondence with Ms. Baker

The defendants are also asserting attorney-client privilege for a series of correspondence between Attorney Constance Baker and the hospital's Medical Staff.  Ms. Baker was the attorney for the WCHA's Medical Staff.  Defendants argue that the documents are protected under the common interest (or "joint defense") rule.  They contend that because the interests of the Medical Staff and the WCHA were "aligned," in that both wanted "to ensure that Dr. Gabaldoni received the protections provided by the Medical Staff Bylaws...," the Hospital is thus entitled to invoke

privilege to protect correspondence between Attorney Baker and the Medical Staff.

The Court finds that the common interest rule does not apply to these documents.  In general, two parties must share a "common interest about a legal matter" in order to invoke the privilege. United States v. Aramony, 88 F.3d 1369, 1392 (4th Cir. 1996) (citing United States v. Schwimmer, 892 F.2d 237, 243 (2nd Cir. 1989)).  Actual litigation need not be in progress for the privilege to apply.  Nevertheless, "[o]nly those communications made in the course of an ongoing common enterprise and intended to further the enterprise are protected."  Schwimmer, 892 F.2d at 243.  This limitation is in keeping with the policy justification behind the common interest rule:  to protect the confidentiality of communications where a "joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel."  Id.

In this case, the defendants, as the party asserting privilege, have the burden of demonstrating the applicability of the joint defense rule.  See, e.g., Sheet Metal Workers Int'l Assoc. v. Sweeney, 29 F.3d 120, 125 (4th Cir. 1994).  The defendants have not established the existence of any coordination or cooperation between the Medical Staff and WCHA in reviewing Dr. Gabaldoni's application for reappointment.  Both entities may indeed have wished to ensure that they followed hospital rules

and regulations in reviewing Dr. Gabaldoni's application, as the
defendants assert.[2]   This shared desire, however, is not
equivalent to a shared "effort or strategy" that is necessary to
invoke the common interest rule.  Instead, the Medical Staff
conducted its own review of Dr. Gabaldoni's application and
issued its own recommendation.  This recommendation was overruled
by the Hospital Board.  There is no evidence of any joint effort
in the conduct of these reviews.

     As with all claims of attorney-client privilege, the
privilege is waived if the communication is disclosed to a third
party.  See United States v. Jones, 696 F.2d 1069, 1072 (4th Cir.
1982).  In this case, because the joint defense rule does not
apply, once the communications between the Medical Staff and
Attorney Baker were shared with counsel for WCHA, any privilege
claims were waived.  Documents C1 through C6 are therefore not
privileged and must be produced to the plaintiff.  Defendants may
redact the second paragraph of document C6 (beginning with
"Additionally"), as it is unrelated to this case.


**C.   Materials sought in the plaintiff's December 23, 1999 letter**

     In his letter of December 23, 1999, the plaintiff requests
in camera review of all redacted minutes he received from WCHA.

---

     [2]The Court notes it is not deciding this issue, but rather
accepts the defendants' argument for the purposes of this
memorandum.

Defendants have submitted the minutes in question as their
Exhibit E.  The Court finds as follows:

E1, E2, E3, E4, E5, E8: The redacted material is non-
responsive and need not be produced to the plaintiff.

E7 and E9:  Defendants assert these documents have been
produced in their entirety.  If through some oversight they have
in fact not been produced, they should be.

E6 (April 16, 1996 Minutes of the Professional Affairs
Committee):  The first paragraph on page 3 is responsive and
should not have been redacted.  All other redacted material is
non-responsive and need not be produced.  Defendants are to
produce a revised redacted version of this document.

The plaintiff has also requested that the Court reconsider
its December 14 ruling on the privileged nature of the other
minutes of executive committee sessions.  The Court's opinion on
this matter is unchanged.

## D.   Requests for Further Discovery and Scheduling Matters

The Court is in receipt of several letters from both sides
concerning the plaintiff's request to reopen discovery.  The
Court finds that the parties have already undertaken extensive
discovery in this case, and it therefore denies the plaintiff's
request.

The defendants will be directed by separate Order to produce to the plaintiff within ten days all documents in compliance with this memorandum. The defendants will then have seven days to supplement their summary judgment motion if they so choose. The plaintiff will have an additional seven days to supplement his response.

Dated this _10TH_ day of February, 2000.

Benson Everett Legg
United States District Judge